No. 7:04-CR-85-2-F
7:08-CV-61-F

BRANDON RIVERS,                    )
                    Movant,        )
                                   )
            v.                     )              O R D E R
                                   )
UNITED STATES OF AMERICA,          )
                    Respondent.    )

This matter is before the court on the Government's Motion to Dismiss [DE-209]

Brandon Rivers' ("Rivers") Motion to Vacate, Set Aside or Correct his Sentence [DE-194]

pursuant to 28 U.S.C. § 2255. Rivers has filed a Response [DE-214] in opposition thereto, and

the matter is ripe for disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

Brandon Rivers was one of four defendants named in an Indictment [DE-16], returned

on June 23, 2004. Rivers was charged in Counts One and Three; lead defendant, Gary Edward

Nixon, was charged in each of Counts One through Eight.[1] Rivers was not arrested on the

Indictment before a Superseding Indictment [DE-52] was filed on September 22, 2004. Again

Rivers was charged only in Counts One and Three while co-defendant, Gary Edward Nixon, was

charged in each of Counts One through Eight.[2] Count One of the Superseding Indictment

charged a conspiracy to distribute and to possess with the intent to distribute more than five (5)

grams of cocaine base (crack). Count Three charged that Rivers aided and abetted Nixon in

distributing "a quantity" of cocaine base (crack). Rivers was not named in any of the remaining

counts charging substantive drug trafficking offenses. As charged in the Superseding

---

[1]   The two other co-defendants, Jason Jerome Millhouse and Martha Neives
Hernandez, are not relevant to the instant motion.

[2]   Millhouse and Hernandez were not named in the Superseding Indictment.

Indictment, Nixon faced a total statutory maximum term of 200 years imprisonment; Rivers, on the other hand, faced a total of 60 years.

After the denial of his second court-appointed attorney's motion to withdraw and to continue arraignment and trial [DE-73], Nixon entered into a Memorandum of Plea Agreement [DE-82] with the Government, agreeing to plead guilty to Count One in exchange for the dismissal of Counts Two through Eight. Nixon entered his guilty plea on December 13, 2004. By virtue of his plea agreement, Nixon reduced his exposure to a statutory maximum of 40 years. However, he became obligated, *inter alia,* "[t]o testify, whenever called upon to do so by the Government, fully and truthfully in any proceeding, and to disclose fully and truthfully in interviews with Government agents, information concerning all conduct related to the Superseding Indictment, and any other crimes of which the Defendant has knowledge." Memorandum of Plea Agreement [DE-82], ¶ 2(j), p. 4.

## ARRAIGNMENT AND TRIAL

Brandon Rivers also had been represented by two different attorneys by the time his case was called for arraignment on January 18, 2005, on which date he advised the court that he was not fully satisfied with his second court-appointed attorney. Rivers was offered the alternative of representing himself with his second court-appointed attorney acting as standby counsel. The undersigned afforded Rivers and his appointed counsel an opportunity to discuss the options while the court addressed other matters. Later in the day, the court called the case for arraignment. Rivers was sworn and was asked the usual Rule 11 questions, the court having been informed that Rivers would enter a guilty plea pursuant to a Memorandum of Plea Agreement with the Government. The court informed Rivers of the penalties for Counts One and Three, and inquired of defense counsel whether there was "anything that needs to be taken up at this time . . . in conjunction with his charges." Transcript of January 18, 2005, arraignment, at pp. 20-21. Although defense counsel responded that there was not, the

2

Assistant United States Attorney (AUSA) appearing on behalf of the prosecuting AUSA advised the court that Rivers had decided to withdraw from the written plea agreement at the last minute. In light of that decision, the Government filed, in open court, a Notice of Intent to Seek Enhanced Penalty [DE-92] under 21 U.S.C. § 851. *See id.* at p. 21. The AUSA was not prepared to advise the court of the enhanced penalty to which the § 851 notice subjected Rivers, so the court agreed again to hold open the arraignment while the AUSA researched it.

Still later in the day, the case was called for a third time. Because Rivers confirmed under oath that he had decided to go forward with the plea agreement after all, the court did not advise Rivers of the enhanced penalty; the plea agreement provided that no enhancement would be filed. The court proceeded with the Rule 11 hearing and the AUSA read into the record the terms of the plea agreement which Rivers ratified under oath. As the Rule 11 proceedings were concluding, the following exchange took place:

> THE COURT: Did you, as charged in Count Three, on or about April 7[th], 2004, aid and abet another in the distribution of crack cocaine knowing that it was crack cocaine; did you do that?
>
> MR. RIVERS: Based on the April 8th – I'm taking this plea initially based – saying that –
>
> THE COURT: Did you help somebody distribute crack cocaine on that day or help somebody possess it with the intent to distribute it?
>
> MR. RIVERS: Not knowingly, sir.
>
> THE COURT: All right. The matter is set for jury selection tomorrow morning at 10:00 a.m.

*Id.* at p. 34.

The AUSA read aloud the penalties for Counts One and Three, as enhanced pursuant to § 851, after which defense counsel requested to approach the bench. *See id.* at p. 35. Both defense counsel and the AUSA advised the court that the case was not ready for trial that term, as everyone had anticipated a guilty plea based on the signed Memorandum of Plea Agreement,

3

and counsel requested that the trial be continued to the next term of court. *See id.* at pp. 35-36. The court allowed the motion to continue and stated, "Now, I'm not going to accept his – you know, he's made . . . his bed and he's going to lie in it. If he wants to plead straight up, that's up to him." *Id.* pp. 36-37

When the case came on for trial, the court confirmed that Rivers had been advised of his rights and of the penalties applicable to the charges to which he pled "not guilty." *See* Transcript of February 22, 2005, arraignment. Rivers was convicted of both Counts One and Three after a two-day trial at which Gary Nixon was the Government's star witness. Also testifying for the Government were Government informant Katrina Wynne, a/k/a "Trina," and DEA Task Force Officer, John VanDalen.[3] The trial transcript speaks for itself; the details of the Government's case against Rivers were related by Nixon and Trina. The significant portion of VanDalen's testimony, for the defense, was his confirmation that Trina failed to name Rivers in her written statement of April 7th. VanDalen admitted that Trina's omission of the detail that she received the crack from Rivers was an oversight on his part and that he should have told her to include it.

The State Bureau of Investigation ("SBI") chemist testified that the controlled substance submitted for her analysis in this case was composed of 2.3 grams of cocaine base, and 1.3 grams of cocaine base, for a total of 3.6 grams of cocaine base. She confirmed that Rivers' name did not appear on the paperwork she received accompanying the substance to be tested.[4]

---

[3]    The Government also called a chemist to testify as to the chemical make up and quantities of the controlled substances seized, and a DEA Agent to testify concerning post-arrest statements Rivers made to him after Rivers waived his *Miranda* rights.

[4]    The case name appearing on the paperwork submitted to the SBI lab was "Gary Nixon." *Id.* at 233-34.

On June 1, 2005, Rivers filed a handwritten, pro se motion [DE-133] seeking dismissal of his convictions due to prosecutorial misconduct related to discovery and production of evidence at trial, apparently related to Trina's testimony. By order of June 6, 2005, [DE-135], Rivers' motion was denied so that he could pursue the issue on appeal. Prior to his sentencing hearing, Rivers filed another pro se motion, this one purportedly pursuant to 28 U.S.C. § 2255, alleging abuse of discovery, prosecutorial misconduct and ineffective assistance of counsel. See [DE-140].

Rivers explained in his pre-sentence, August 15, 2005, § 2255 motion [DE-140] that when he initially was arraigned and attempted to enter a guilty plea, he admitted to the court that he did not remember committing the offense alleged in Count Three of the Superseding Indictment, and as a result, the court rejected his guilty plea, forcing him to be tried by a jury on both counts. He complained that his trial lawyer never advised him that he had "a right" to plead guilty without admitting factual guilt, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1969); *United States v. Morrow*, 914 F.2d 608 (4th Cir. 1990), and the court never offered him that option. The gravamen of Rivers' complaints was that the Government's case against him consisted almost exclusively of testimony by cooperating individuals with whom he was alleged to have conspired; Nixon was testifying pursuant to his Plea Agreement and Trina had been granted immunity from prosecution in exchange for her testimony against Rivers. Because these witnesses were not credible, he contends he should not have been convicted.

By order [DE-143] of August 29, 2005, the court attempted to explain to Rivers why he might choose not to pursue that § 2255 motion yet, advised him of the potential consequences of doing so, and directed him to advise the court how he wished to proceed. Rivers eventually[5]

---

[5]   Rivers sought and received a number of extensions of time to respond

elected to withdraw [DE-163] his August 2005, § 2255 motion, and the order allowing him to do so was entered on March 22, 2006 [DE-164], after he had been sentenced.

## SENTENCING

Rivers' sentencing hearing was conducted on August 17, 2005. Based on a preponderance of the evidence presented at the sentencing hearing, Rivers was held accountable for 400.30 grams of cocaine base (crack), resulting in a base offense level of 34. However, his substantial criminal record, which included at least two prior felony convictions of either a crime of violence or a controlled substance offense, had earned him "career offender" status under advisory U.S.S.G. § 4B1.1. Together with his criminal history category of VI, Rivers' advisory USSG guideline range was calculated to be 360 months to life imprisonment. Absent the statutory enhancement under 21 U.S.C. § 851, Rivers' maximum sentence would have been capped at 240 months, notwithstanding the advisory USSG range. The Government's election to pursue the statutory enhancement in light of Rivers' prior felony drug convictions increased the statutory maximum sentence on Count One to life imprisonment, and on Count Three to 30 years. The court sentenced Rivers to 360 months on each of Counts One and Three to run concurrently. *It was Rivers' prior criminal record that drove his sentence.*

## DIRECT APPEAL

On direct appeal, the Fourth Circuit Court of Appeals found no plain error in the district court's rejection of Rivers' guilty plea in light of his refusal to admit he committed the offense "knowingly." In doing so, that court pointed out that "[a] defendant has no constitutional right to plead guilty, or to require the court to accept a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1969)." *See United States v. Rivers*, No. 05-5045 (Jan. 25, 2006) (per curiam) [DE-178].

Rejecting Rivers' appeal of the denial of his Rule 29 motion, the appellate court characterized it as merely an argument that the Government's witnesses were not credible,

6

which determination was "solely within the province of the jury." The appellate court further held that Rivers' attack on the constitutionality of the career offender enhancement was foreclosed by *United States v. Collins*, 412 F.3d 515, 521-23 (4th Cir. 2005) (holding that, where the facts are undisputed, application of the career offender enhancement falls within the exception for prior convictions under *United States v. Booker*, 543 U.S. 220 (2005)).

Finding that Rivers' sentence was presumptively reasonable pursuant to *United States v. Green*, 436 F.3d 449, 457, *cert. denied*, 547 U.S. 1156 (2006), and that the undersigned properly had calculated the advisory sentencing range, had determined that a sentence within than range adequately would serve the § 3553(a) factors, had implemented the mandatory statutory limitations, and had explained its reasons for selecting the proper sentence, the appellate court affirmed Rivers' conviction and sentence by unpublished opinion announced on January 25, 2007. Rivers filed a timely § 2255 motion on April 28, 2008 [DE-194].

## SECTION 2255 MOTION

Rivers' allegations have been consistent all along that he was the victim of prosecutorial misconduct, witness perjury, and ineffective assistance of trial counsel. He pressed these claims in many forms following his conviction, and both he and his mother diligently telephoned and wrote letters to the undersigned and the criminal deputy clerk of court for many months following sentencing. In his timely, post-appeal § 2255 motion [DE-194], Rivers raises the following claims:

First, Rivers contends his trial counsel was ineffective because counsel failed to spend sufficient face-to-face time with him in preparation for trial. Rivers offers as proof of his allegation a copy of the jail's visitors' log for the duration of his tenure there.

Second, Rivers contends that trial counsel rendered ineffective assistance because he did not challenge the Government's obtaining an indictment from the grand jury charging in Count One that he conspired with Nixon, Millhouse and Hernandez to distribute more than five (5)

7

grams of cocaine base (crack). Rivers contends he did not even know Millhouse or Hernandez, much less conspire with them to distribute crack. Although his argument is difficult to follow, it seems he alleges that the Government obtained the indictment against him on one set of facts, but tried and convicted him on a different set of facts. In fact, Rivers was tried only on the *Superseding* Indictment, which names neither Millhouse nor Hernandez in the Count One conspiracy charge against Rivers and Nixon.

Third, Rivers claims that his trial counsel failed to inform or assist him with the arraignment proceedings. Specifically, Rivers contends that he could not admit "knowingly" having committed the offense charged in Count Three of the Superseding Indictment, because (a) he did not remember what he did on April 7, 2004, due to the passage of time; and (b) the discovery produced by the Government had informant Trina buying crack cocaine on that date from Gary Nixon, yet, before the grand jury and at trial, the Government's evidence had been that Trina bought the crack from Rivers. Therefore, in light of his lack of memory of the event and the contradictory evidence produced in discovery, Rivers believes he could not admit, under oath, that he "knowingly" committed the acts constituting the offense charged in Count Three.

He further contends that, had he been aware of his right to enter an *Alford* plea, he would have done so, but that his trial counsel failed to so advise him or to pursue that option. The record reflects, of course, that the court refused to accept Rivers' guilty plea in the absence of a factual basis therefor, and Rivers faults his trial counsel for allowing that to occur. Rivers acknowledges that he raised the court's rejection of the plea agreement on direct appeal, but points out that the instant motion raises the matter in the context of an ineffective assistance of counsel allegation.

Fourth, Rivers contends that his trial counsel's "negligence" impaired his ability to receive a fair trial. Specifically, he alleges that (a) counsel failed to share with him additional discovery containing the "core criminality" against which he would need to prepare for trial; (b)

8

counsel failed to prepare and produce "credible witnesses [who] were obviously available"; (c) counsel failed to interview Rivers' co-defendants or other Government witnesses; (d) counsel failed to obtain Rivers' voice exemplar for comparison with the Government's audio recording of the April 7, 2004, drug transaction that formed the basis for Count Three; and (e) trial counsel failed to prepare for trial or to spend sufficient time with Rivers.

Fifth, Rivers contends that his trial counsel's "negligence" deprived him of due process of law. Much of the argument supporting this claim is duplicative of the grounds for Ground Four. He also contends that trial counsel failed to pursue a claim that the evidence presented at trial constituted a fatal variance from the evidence presented to the grand jury in obtaining the indictment. Additionally, Rivers contends trial counsel rendered ineffective assistance in failing to seek a limiting instruction to the effect that a government agent (here, informant Trina) could not be the only other member of a conspiracy. Because Nixon testified that he and Rivers never conspired, Rivers contends it is impossible to know who the jury determined to be the other member(s) of the drug conspiracy alleged in Count One.

Furthermore, in support of his due process claim, Rivers contends the AUSA committed prosecutorial misconduct by arguing to the jury that the SBI chemical analyst determined the controlled substances from April 7th to be "crack," when in fact, she testified only that the substances were "a form of cocaine base." Rivers also argues that his trial counsel's failure to seek instructions on a lesser included offense constituted a violation of his right to due process.

Additionally, Rivers advances the argument that trial counsel rendered ineffective assistance by failing to request a mistrial on grounds of abuse of discovery after learning the Government provided false or misleading information in its discovery. He characterizes as "document falsification" Agent VanDalen's admission that he realized at the time that he should have reminded Trina to include Rivers' name in her April 7, 2004, statement but did not do so, predicting that the omission would come back to haunt him. Rivers contends that the

9

Government's failure to point out this single most damning piece of evidence constitutes prosecutorial misconduct. Rivers implies that had Trina's handwritten statement named him rather than Gary Nixon as the person from whom she made the second purchase of crack on April 7, 2004, he would not have been misled by the discovery, would have admitted the conduct forming a factual basis for Count Three, thereby avoiding trial on Counts One and Three and presumably receiving a shorter sentence.

Sixth, Rivers alleges his trial counsel was ineffective in failing to research and utilize obvious plausible defenses to the charges against him, thus resulting in a lower sentence. In support of this claim Rivers contends that a thorough investigation would have revealed Nixon was incapable of producing the quantities of drugs ultimately attributed to Rivers as relevant conduct.

Seventh, Rivers contends his trial counsel rendered ineffective assistance by failing to maintain and provide him with a detailed log of discovery transactions, thus impairing Rivers' ability to assess possible discovery violations to preserve for appeal. Rivers explains that his trial counsel had not been able to recall what was contained in the additional discovery produced by the Government or when it was produced, and that Rivers did not learn of it until three months after he had been convicted. Rivers does not hint at what "additional discovery" he refers to, and he contends that "it remains a mystery."

Eighth, Rivers contends that his appellate counsel was ineffective for failing to raise any of the foregoing grounds, except the third.

Rivers seeks to have his conviction vacated and a new trial ordered "with competent counsel," or to have his "plea revisited."

# I. The Ineffective Assistance of Counsel Claims

A. *Standard of Review*

> The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," U.S. Const. amend. VI, and that such assistance be effective, *see Strickland v. Washington,* 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim . . . [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

*Orbe v. True,* 82 Fed. Appx. 802, 807 (4th Cir. 2003) (internal citations omitted), *cert. denied,* 541 U.S. 970 (2004).

The simple standard for assessing an attorney's competence is whether his "assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688. The judgments of counsel based on a "thorough investigation of the law and the facts," are "virtually unchallengeable," *id.* at 690. This determination of reasonableness requires a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Id.* at 688; *accord Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

11

*Strickland,* 466 U.S. at 689 (citations and internal quotation marks omitted).

An inmate seeking relief on grounds of ineffective assistance must identify the acts or omissions of counsel that he claims did not result from reasonable professional judgment. The court's task is to determine whether, in light of all the circumstances, those identified acts or omissions were outside the wide range of professionally competent assistance. "In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Orbe,* 82 Fed. Appx. at 812-13.

A defendant's right to effective assistance of counsel is constitutionally protected, not for its own sake, but because of the impact it has on his ability to receive a fair trial, *United States v. Cronic,* 466 U.S. 648, 658 (1984), or a fair appeal, *see Penson v. Ohio,* 488 U.S. 75, 88-89 (1988). Absent some impact of counsel's supposedly deficient conduct on the reliability of the trial, the Sixth Amendment guarantee generally not implicated. *See Cronic,* 466 U.S. at 658. Rather, the defendant must demonstrate that his attorney's alleged errors "actually had an adverse effect on the defense." *Strickland,* 466 U.S. at 693. *See also Smith v. Robbins,* 528 U.S. 259, 286 (2000) (applying actual prejudice requirement where counsel followed all required procedures and was alleged to have missed a particular nonfrivolous argument); *Strickland,* 466 U.S. at 699-700 (rejecting claim, partly because the evidence counsel failed to introduce at trial probably would not have altered defendant's sentence). Because the *Strickland* test requires a showing *both* of a constitutionally defective performance and of prejudice, if a petitioner fails to demonstrate sufficient prejudice from certain acts or omissions of counsel, the court need not decide whether counsel's performance in those respects, in fact, was deficient under *Strickland. See, e.g., McHone v. Polk,* 392 F.3d 691, 704 (4th Cir. 2004); *see also Fields v.*

*Att'y Gen. of Maryland*, 956 F.2d 1290, 1297 (4th Cir. 1992) (If defendant shows no prejudice resulting from the alleged ineffectiveness of counsel, courts need not address counsel's performance).

### B. *Rivers' Grounds for Relief*

Although Rivers' § 2255 motion purports to state eight grounds for relief due to ineffective assistance of counsel, many of his allegations are redundant. His claims may be grouped under three headings: (1) Plea Negotiations; (2) Witness Statements; and (3) Other.

### 1. Trial Counsel's Performance in Plea Negotiations

Within the Fourth Circuit, defense counsel's duties as to plea negotiations are to: "1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision." *Jones v. United States*, Civil Action No. DKC 2004-3136, Criminal Case No. DKC 2002-0077, 2008 WL 886119, slip op. at *3 (D. Md. Mar. 28, 2008), relying on *Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir. 1991). Rivers contends that his trial counsel was ineffective for failing to advise him of his right to enter an *Alford* plea and/or to cause the Government and the court to agree to entry of an *Alford* plea as to Count Three.

At the outset, the court notes that there is no constitutional right to plead guilty, much less to require a court to accept an *Alford* plea. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Alford*, 400 U.S. at 38. The Fourth Circuit Court of Appeals recently has reviewed the parameters of *Alford* pleas in the related context of a habeas petition. "In entering an *Alford* plea, the defendant waives a trial and accepts punishment, *but he does not admit guilt*, and the prosecutor's proffer of what the State would have proved at trial does not amount to an admission or acceptance of the facts by the defendant. Rather, it serves the role of providing the court with a basis by which to evaluate the voluntariness of the defendant's plea." *United States*

13

*v. Alston*, ____ F.3d ____, No. 09-4375, 2010 WL 2635796 (4th Cir. July 2, 2010) (emphasis in original) (citing *Alford*, 400 U.S. at 38). In short, an *Alford* plea necessarily requires the agreement and cooperation of the defendant and the Government, and the court's acceptance thereof.

The record in this case, including the documents filed in this instant § 2255 motion, vividly demonstrates the complete lack of such an arrangement. Stated bluntly, the Government did not offer an *Alford* plea and there is no suggestion anywhere in the record or in Rivers' § 2255 pleadings that the Government was inclined to do so.

Furthermore, this court is unaware of any authority for the proposition that an attorney must inform or advise a client to consider entering an *Alford* plea. *See Carr v. United States*, No. 3:08CV123, 3:05CR7, 2009 WL 1867672 (N.D.W. Va. June 29, 2009). Rivers' trial counsel is an experienced trial attorney in this court. That experience likely has taught him that the practice of this court is not to accept *Alford* or "no contest" pleas, and that pursuit of such a strategy most likely would have been futile. The transcript of the January 18, 2005, Rule 11 hearing reveals that after Rivers explained to the court that he could not admit "knowingly" having committing the acts alleged in Count Three because he did not remember the event, the court simply rejected the proffered guilty plea because a factual basis for the elements of the offense did not exist. The alternative to trial that Rivers could "plead straight up" was not a serious one, as Rivers had demonstrated that he lacked the necessary *mens rea* for a finding that a factual basis existed for conviction on Count Three. The court entered a "not guilty" plea on behalf of Rivers as to both Counts One and Three and set the matter for trial at the very next term of court beginning February 7, 2005.[6]

---

[6]   Trial counsel obtained an order continuing the trial to the later term commencing February 22, 2005.

Most significant, however, is the simple fact that had Rivers entered an *Alford* plea, the result would not have been different. Sentencings on *Alford* pleas are the same as on regular guilty pleas. In this case, it would amount to mere speculation to suppose that the Government would not have filed a Notice of Enhancement had Rivers pled guilty, and it is not reasonable to suggest that the Government might have agreed to an *Alford* plea without the enhancement. Assuming, then, that nothing changed except that Rivers pled guilty, pursuant to *Alford* or not, he has offered no suggestion why he might have received anything other than the same 360-month sentence, *because his sentence was driven by his prior criminal history*. Any drug trafficking conviction under Title 21 would have produced the same result by virtue of the statutory enhancement he earned with his criminal record.

Theoretically, if Rivers had been able to recall and to admit to commission of the offense alleged in Count Three pursuant to the rejected Plea Agreement, the Government presumably would not have filed a Notice of Enhancement,[7] thus capping his statutory exposure at 240 months. Rivers might have been afforded a two-point adjustment for acceptance of responsibility. If that were the case, and assuming the same drug quantity finding (400.30 grams of crack), under this best-case-scenario, Rivers' base offense level would have been 34, reduced by two points for acceptance, resulting in a total offense level of 32. An offense level of 32 and criminal history category of VI results in an advisory USSG range of 210-260 months. Assuming further that the court determined, after consideration of all applicable sentencing factors, that a within-the-range sentence was appropriate, then Rivers' sentence would have been lower than what he actually received.

---

[7] Nixon's Plea Agreement contained the provision that the Government would not file a Notice of Enhancement.

The court declines to base a finding of *Strickland* prejudice on such speculation, however. In *Carr v. United States*, 2009 WL 1867672, the district court was faced with a similar proposition. Its analysis is worthy of repetition here:

> [P]etitioner's entire prejudice argument is based upon the supposed three-level reduction he would have received during the sentencing phase for acceptance of responsibility by entering an *Alford* plea as opposed to being convicted at trial.
>
> According to the United States Sentencing Guidelines, a Court is not required to grant a defendant acceptance of responsibility even when the defendant has pleaded guilty. *See* USSG § 3E1.1, Commentary, Application Note 1. The United States Court of Appeals for the Fourth Circuit has been equally firm in noting that reductions for acceptance of responsibility should not be meted out to defendants just because the individual pleaded guilty. In *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996) the Court noted that a defendant has to prove to the court by a preponderance of the evidence "that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct" to earn a reduction based on acceptance of responsibility. Furthermore, an *Alford* plea (pleading guilty, but protesting innocence) is a factor that the Court may consider when imposing sentence, though it does not preclude the possibility of the reduction. Petitioner's entire prejudice argument is based upon the supposed three-level reduction he would have received during the sentencing phase for acceptance of responsibility by entering an *Alford* plea as opposed to being convicted at trial.
>
> Accordingly, petitioner's speculative prejudicial argument that he would receive a reduction for acceptance of responsibility had he entered an *Alford* plea is without merit because the preceding review demonstrates that acceptance of responsibility reductions are not guaranteed, including the *Alford* plea context. Additionally, a Court may truly question whether an individual has accepted responsibility when he pleads guilty, yet protests his innocence. In any event, it is petitioner's burden to demonstrate that he was prejudiced and petitioner cannot be prejudiced for not receiving something that he has no right to receive.

*Id.*, slip op. at * 8-9.

It was Rivers' *own position* that required the court to reject his guilty plea, and also would have precluded acceptance of an *Alford* plea, even had such a plea been offered. Without a factual basis on record for a guilty plea, the court may not accept it. *See Alford*, 400 U.S. at 37-38. Rivers continues to maintain his inability to admit a factual basis for Count Three, and has not suggested how his trial counsel could or should have prevented the consequences of Rivers' presumably sincere inability to make such an admission.

16

Even if Rivers were afforded the relief he seeks – to enter an *Alford* plea to the charges against him in the Superseding Indictment – he has not suggested how the result of his sentencing would have been different. An *Alford* plea is sentenced just the same as a "regular" guilty plea. Absent such a showing, the court cannot make a finding of *Strickland* "prejudice" resulting from his trial counsel's alleged inferior performance. Because the court concludes that Rivers has failed to allege that he suffered cognizable "prejudice," he cannot meet the two-pronged *Strickland* test and is entitled to no relief on any claim based on the premise that his trial counsel failed to secure an *Alford* plea for him.

2. Trina's Statement and Nixon's Interview

Two themes permeate the remainder of Rivers' § 2255 motion. The first concerns evidence contained in and arising from Trina's handwritten statement provided to law enforcement officers following her April 7, 2004, monitored purchase of crack. Rivers contends Trina's oral testimony at trial concerning that event suggested that Agent VanDalen intentionally falsified Trina's written statement, presented perjured testimony to the grand jury in order to obtain an indictment, and admitted at trial that he knew the statement was misleading at the time he received it from Trina, yet decided not to correct it.

a. *Trina's Handwritten Statement*

Trina Wynne, the Government's immunized informant, conducted a monitored purchase of crack cocaine on April 7, 2004. Evidence adduced at trial from Nixon and Trina tended to show that Trina initially had purchased a quantity of crack from Nixon for $100 earlier that day, but that Nixon did not have as much crack as Trina wanted to buy. Having completed an errand for Nixon, Trina caught up with him when he arrived in his car at Seventh and Ann Streets. She testified that she was surprised to see Rivers "in the floorboard" of Nixon's car. Nixon, who had been driving, got out of the car, received the items Trina had purchased for him and engaged in a heated conversation with her concerning an additional quantity of drugs as they stood on the

17

street. Rivers remained inside the car. Unbeknownst to them Trina was wearing a wire and was working for police. Nixon directed Rivers to hand her the crack. Rivers reportedly did so, and in exchange, Trina gave *Nixon* $60 of police "buy money." [8] Trina testified that she and Rivers argued as she was walking away from Nixon's car.

Trina's handwritten statement produced in discovery indicated that Trina had obtained the crack from Nixon, and did not name Rivers. She explained on redirect examination at trial that she had omitted Rivers' name from that statement because "the focus of the investigation, again, was Gary Nixon." Trial Transcript p. 180. When defense counsel re-cross-examined case agent John VanDalen, VanDalen acknowledged he had realized at the time she wrote it, that Trina had failed to mention Rivers, that he should have asked her to include him, and that he had suspected the discrepancy would "be an issue" at trial. VanDalen testified that Trina had, in fact, told him she had received the crack from Rivers. The transcript reflects defense counsel's rigorous cross-examination of VanDalen, resulting in VanDalen's repeated admission that Trina's written statement did not name Rivers and acknowledgment of the discrepancy it created in the evidence.

### b. *Nixon's Interview*

The second persistent theme is Rivers' contention that his defense counsel "withheld" from him "core criminality" evidence consisting of a DEA interview of Nixon, conducted in jail several weeks after the Superseding Indictment had been filed. Testimony received at trial revealed that during this interview Nixon did implicate Rivers, and that Nixon repeatedly had asked the interviewing DEA agent and the attending AUSA what sort of a break in his own prosecution he might expect if he were to name others. Defense counsel's dogged and searching

---

[8]  A police report of the transaction incorrectly states that $160 was exchanged for the crack on this occasion. Evidence at trial showed that $160 was the total amount Trina had spent on monitored crack buys involving Nixon that day.

cross-examination on this point left no doubt that Rivers' contention was that Nixon's naming him as complicit in his drug activities was for the sole purpose of currying favor with the prosecution in hopes of receiving a lesser sentence. Defense counsel elicited from Nixon the admission that his plea agreement with the Government provided that no statutory career offender enhancement would be filed (although he plainly qualified for one), and that the Government would dismiss Counts Two, Three, Four, Five, Six, Seven and Eight of the Superseding Indictment in exchange for Nixon's plea of guilty to Count One. The clear impression this rigorous cross-examination was designed to leave was that Nixon's testimony was so biased that he was not a credible witness.

Rivers contends that his lawyer's failure to share with him information concerning Nixon's November 12, 2004, interview amounted to ineffective assistance of counsel and a denial of due process because it impaired his ability to prepare his defense. Although Rivers advances this contention on a number of occasions, he has not revealed how it is he contends his ability to defend against these charges was impaired. As with the VanDalen testimony, defense counsel thoroughly grilled Nixon on the details and the motivation for the information he disclosed to the Government during the November 12th interview. Although Nixon repeatedly emphasized his reluctance to implicate his friend, Rivers, and his remorse for having to testify against him, defense counsel's searching cross-examination elicited testimony strongly suggesting that Nixon's actions were fueled solely by self-interest.

In short, the basis for most of Rivers' § 2255 claims is his position that the Government's witnesses were not worthy of belief and that the jury should have rejected their testimony. That argument is not cognizable in a § 2255 action, which examines only whether a prisoner is incarcerated in violation of federal law. Credibility determinations are solely within the province of the jury. Moreover, the issue of sufficiency of the evidence to support Rivers' convictions was considered on direct appeal and decided in the Government's favor. The

Fourth Circuit Court of Appeals summarized the law governing its *de novo* review of denial of a Rule 29 motion, then remarked,

> We find that Rivers' argument on appeal amounts to nothing more than his belief that the government witnesses were not credible because they were cooperating witnesses testifying pursuant to plea agreements. Witness credibility, however, is solely within the province of the jury and will not be reassessed on appeal. *See United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).

*United States v. Rivers*, No. 05-5045, slip op. at 4.

The record on its face demonstrates that defense counsel forcefully pursued discrepancies in the Government's evidence and the motivations of Government witnesses in implicating Rivers in the drug distribution scheme, generally, and in the April 7, 2004, transaction, in particular. The jury chose to believe the Government's witnesses and convicted Rivers on both the conspiracy and on the aiding and abetting the April 7th crack sale charges.

### 3. Other

Rivers § 2255 motion raised several additional grounds for relief but this court's careful review of those grounds has led the court to conclude that none entitle him to the relief he seeks.

## CONCLUSION

For the foregoing reasons, the court finds that Rivers' § 2255 motion does not state a claim upon which relief is available. Therefore, the Government's Motion to Dismiss [DE-209] Rivers' Motion to Vacate, Set Aside or Correct [DE-194] his conviction and/or sentence is ALLOWED. This action is DISMISSED, and the Clerk of Court is DIRECTED to close this case.

Having ordered herein the denial of Justin Roberson's application for relief pursuant to 28 U.S.C. § 2255, I, James C. Fox, Senior United States District Judge for the Eastern District of North Carolina, am of the opinion that Roberson has failed to make a substantial showing of the denial of a constitutional right, and that no reasonable jurist would find my assessment of Roberson's constitutional claims debatable.

Therefore, it is ORDERED that a Certificate of Appealability        is DENIED.

20

SO ORDERED.

This the 3rd day of August, 2010.

James C. Fox
JAMES C. FOX
Senior United States District Judge

21